**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CRIMINAL NO. 06-21-06 (RBW) |
| | : | |
| JAMES MORGAN, et al. | : | Judge Reggie B. Walton |
| Defendant. | : | |

**MOTION FOR EMERGENCY REVIEW AND APPEAL OF RELEASE ORDERS**

*COMES NOW*, the United States of America, by and through its Attorney, the United States Attorney for the District of Columbia, and respectfully moves this Court to hear an appeal for review of the Magistrate Judge's decision to release defendant pending trial. The record shows that no condition or combination of conditions for defendant's release can reasonably assure the safety of the community. Thus, we ask the Court to hold defendant without bail pending trial. In support thereof, we submit the following:

**BACKGROUND**

The government's investigation of the narcotics conspiracy to which the defendant is connected has uncovered this large-scale drug trafficking organization operating in the metropolitan D.C. area. On or about August 23, 2006, the defendant, James Morgan, and his seven co-defendants were indicted in a 115-count indictment.[1] The indictment alleges, among other things, that the defendants unlawfully distributed and possessed with intent to distribute: a mixture and substance of one kilogram or more of heroin; a mixture and substance of five kilograms or more of cocaine; a mixture and substance of 50 grams or more cocaine base; a mixture and substance of one kilogram or more of phencyclidine (PCP); and a mixture and substance of cannabis.

---

[1] All other defendants are held without bond.

On or about November 22, 2005, the Honorable Emmet G. Sullivan authorized the interception of wire communication to and from co-defendant Cinquan Blakney's cellular telephone. On or about November 26, 2005, the defendant and co-defendant Cinquan Blakney discussed Blakney supplying Morgan with drugs. Morgan asked Blakney if he had a little on him to which Blakney said not a lot. Morgan said every little bit helps. Blakney, in code, stated police are everywhere.

On or about December 7, 2005, Morgan left a message on Blakney's cellular telephone. During the message, Morgan said he wants to see "Reggie Miller," a common reference to a quantity of illegal narcotics, in the drug trade. On December 8, 2005, Morgan called Blakney on two occasions and left messages for Blakney. During the messages, Morgan pleaded with Blakney to help him out. Morgan also said he has "shit" in the street, and Morgan needs Blakney to help him out. On December 10, 2005, Morgan called Blakney and wanted to meet him, and in code they discussed drugs.

On or about January 13, 2006, FBI and other law enforcement officers executed a judicially approved search warrant for 119 Cree Drive, Forest Heights, MD. This home is not only Morgan's residence it is owned by Morgan. After gaining entry into the residence, law enforcement officers found Akilah Moore asleep on the living room floor. The defendant was not home. Law enforcement officers searched the defendant's residence and found the following items throughout the residence: documents (including a birth certificate and financial documents) in Morgans name; drug paraphernalia; over ninety small clear bottles (used to supply PCP); over 86 grams of marijuana; 3 digital scales, disposable glove facial masks, approximately 237 grams of PCP (street value of approximately $10,000); a gallon, half full, of polish remover; $1785.00 in U.S. Currency;

4 cellular telephones; and a loaded .25 caliber firearm inside an MCI backpack.[2] Akilah Moore told law enforcement officers that she was dating the defendant, she was an overnight guest, and that the illegal contraband were not her property.

On or about October 3, 2006, the defendant was arrested. On December 19, 2006, United States Magistrate Judge John M. Facciola presided over the defendant's detention hearing. The Government asked the Court to hold the defendant without bail pending trial, in keeping with the Bail Reform Act, 18 U.S.C. §§ 3142(f)(1)(B), 3142(f)(1)(C), and 3142(f)(2)(A). That motion was based on 18 U.S.C. §§ 3142(f)(1)(B) which authorizes pre-trial detention in any case involving a crime of violence, pursuant to 18 U.S.C. § 924(c). Count Ten in the indictment charges the defendant with a crime of violence. Also, § 3142(f)(1)(C) which authorizes pre-trial detention in any case involving a crime under the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, carrying a maximum penalty of ten years or more in prison. Count One of the indictment charges in the defendant with a crime which carries such a mandatory minimum term of ten years and up to life imprisonment. And § 3142(f)(2)(A) authorizes pretrial detention in any case where there is a serious risk [a defendant] will flee. Based on the offenses the defendant is charged with in the instant indictment, if he was convicted at trial he would face a minimum mandatory sentence of twenty-five years imprisonment, and a maximum sentence of life imprisonment. That law <u>presumes</u> that persons should be incarcerated pending trial when charged with the crimes for which defendants have been indicted. 18 U.S.C. § 3142(e)

---

[2] We also note that Morgan had worked at the MCI Center in Washington, D.C. We also note that Morgan is a convicted felon.

At the detention hearing, Magistrate Facciola overruled the detention motion by the government, and admitted defendant to heightened supervision. The government alerted Magistrate Facciola of its intention to appeal his ruling and requested that the court stay the defendant's release. Magistrate Facciola took note of the government's notice of appeal, and then denied the government's request to stay the defendant's release.

## ARGUMENT

This Court should overturn the decision to release defendant and order them held without bail instead. When detention has been denied, 18 U.S.C. § 3145(a) states:

> (a) Review of a release order – If a person is ordered released by a magis-
>     trate, . . .
>     (1) the attorney for the Government may file, with the court
> having original jurisdiction over the offense, a motion for revocation
> of the order or amendment of the conditions of release . . .

The motion shall be determined promptly.

On the government's motion to appeal a release order, this Court considers *de novo* the Magistrate Judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not raised previously. In short, the Court may proceed in the way that best enables it to answer the question posed: whether any condition or combination of conditions will reasonably assure the safety of any other person and the community? To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determi-
> nation that Federal bail laws must . . . give the courts adequate
> authority to make release decisions that give appropriate recognition
> to the danger a person may pose to others if released. . . .   The

4

> constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . ***This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.***

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S.Code Cong. & Ad.News 3182, 3486-3487. (Emphasis added.)[3]

---

[3] The Court must always consider whether defendant's release is a danger to the community. This point is made throughout the Bail Reform Act. Section 3142(e), which authorizes detention without bail pending trial, which reads:
> If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required *and the safety of any other person and the community*, such judicial officer *shall order* the detention of the person before trial.

Emphasis added. Similarly, § 3142(f) reads:
> The judicial officer shall hold a hearing to determine whether any condition of combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person *and the safety of any other person and the community* –
>> (1) upon motion of the attorney for the Government, in a case that involves,
>>> (C) an offense for which a maximum term of imprisonment
>> of ten years or more is prescribed in the Controlled Substances Act
>> (21 U.S.C. § 801 *et seq*.) . . .

Emphasis added. This point is again made in § 3142(g), **Factors to be considered**, which states:
> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required *and the safety of any other person and the community*, take into account the available information concerning –
>> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>> (2) the weight of the evidence against the person;
>> (3) the history and characteristics of the person . . .
>> (4) *the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .*

No condition of release nor combination of them can ensure that defendant will not pose a danger to the community if released.  This is based first upon the presumption to that effect written into the Bail Reform Act.  18 U.S.C. § 3142(e) ("Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions of release will reasonably assure the . . . safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act.").  This presumption, triggered by indictment, is reinforced overwhelmingly by the facts of the case.

The defendants is in the drug trade, and a threat to return to it if released.  The large quantity of drugs, the drug packaging materials, scales, the large sum of money, and the loaded firearm establish that the defendant was not a perirhinal player in the drug trade.  Although the defendant was gainfully employed, this did not deter him from continuing his drug trade.

At the detention hearing, the defendant, through counsel argued that the loaded firearm was found inside a purse.  The loaded firearm was found inside a backpack with the words MCI inscribed on it.  Incidentally, the defendant acknowledged that he previously worked at the MCI Center (now known as the Verizon Center), for twelve years.  Also, the defendant proffered to Magistrate Facciola that he owned the home at 119 Cree Drive, Forest Heights, MD.  Although the government is not yet privy to the defendant's affidavit in support of indigency, which permitted him to have CJA appointed,  the defendant previously argued to this Court his lack of assets to afford an attorney, but then argued to the magistrate judge that his residence should be used as bond

---

(Emphasis added.)

for release purposes. These facts embody the danger that defendant's release poses. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . . The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community.

S.Rep. No. 225, *supra*, at 3195-3196.

The defendant also relied on community ties to overcome the presumption that he should be held pending trial. Again, the framers of the 1984 Bail Reform Act thought differently. "The Committee also notes with respect to the fact of community ties that it is aware of the growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community." S.Rep. No. 225, supra, 3207. Nor is it clear why community ties, which stopped defendant not at all from selling drugs as described above, now will keep him from doing so again.

Counteracting the representations made by defendant is the seriousness of the charges he faces, and the strength of the government's evidence, which the Court must also consider in determining whether the defendant has overcome the presumption that there are no conditions of release that would ensure the safety of the community. 18 U.S.C. § 3142(g). A substantial seizure of PCP and a loaded firearm were made from the defendant's residence. The government also has wire interceptions demonstrating narcotics trafficking activities between Morgan and Blakney. All eight defendants are charged with Conspiracy to Distribute and Possess with Intent to Distribute

Heroin, Cocaine, Cocaine Base, Phencyclidine and Marijuana; if convicted, defendant faces a sentence from between twenty-five years to life without parole.

In addition, defendant has a criminal record. In 1997, Morgan was convicted of distributing cocaine (D.C. Superior Court Case No. F-9809-86), for which he received a felony sentence.[4]

In summary, defendant's release constitutes a clear, convincing danger to the community. The order releasing him should be reversed for the reasons set forth above and for any other reasons appearing at a hearing on this motion.

*WHEREFORE*, the United States respectfully prays this Honorable Court to convene a hearing to review the decision to release the defendant, and to order instead that he be held without bond pending trial.

Respectfully submitted,

_____
ANTHONY SCARPELLI
GEORGE ELIOPOULOS
ASSISTANT UNITED STATES ATTORNEYS
U.S. Attorney's Office
Organized Crime & Narcotics Trafficking Section
555 4th Street, N.W., Room 4816
Washington, DC 20530
(202) 353-1979

---

[4] Pre-Trial Service believes that the sentence may have expunged. According to the government's investigation, that charge still appears in the NCIC, and therefore, appears to not have been expunged. Furthermore, the government has noted a second distribution of cocaine arrest assigned to the defendant (D.C. Superior Court Case No. F-13720-87), but has been unable to determine the disposition of that case.

**CERTIFICATE OF SERVICE**

I certify that, on this 20th day of December, 2006, I have caused service of the foregoing to be made by ECF to Brian McDaniels, counsel for James Morgan.

_____
ANTHONY SCARPELLI
ASSISTANT UNITED STATES ATTORNEY