**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FILED

JAN  8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| v. | )  Criminal Action No. 06-21-06 (RBW) |
| | ) |
| JAMES MORGAN, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**MEMORANDUM OF FINDINGS OF FACT**
**AND STATEMENT OF REASONS**
**IN SUPPORT OF DETENTION ORDER**

This matter came before this Court on the government's Motion for Emergency Review and Appeal of Release Order ("Motion") challenging Magistrate Judge Facciola's December 19, 2006 decision to release defendant James Morgan ("the defendant") pending his trial or other resolution of this case. To memorialize this Court's oral findings of fact and conclusions of law made at the motions hearing held on December 20, 2006, in accordance with the detention order issued on December 21, 2006, and for the reasons stated below, the Court grants the government's motion and orders that the defendant be held without bond pending the resolution of this case.

**I. Factual Background**

The defendant is one of eight co-defendants charged in a 115-count indictment alleging the defendants' involvement in a "large-scale drug trafficking organization operating in the

1

metropolitan D.C. area." Motion at 1. As support for this claim, the indictment contends, inter alia, that the defendant conspired to distribute, and to possess with intent to distribute, various amounts of heroin, cocaine, cocaine base, cannabis, and phencyclidine (PCP), all in violation of the Controlled Substances Act, 21 U.S.C. § 801 et seq. (2000). August 23, 2006 Superseding Indictment ("Indictment") at 2-3; see also Motion at 3. Several of the counts of the indictment expose the defendant to "a term of imprisonment which may not be less than 10 years or more than life." 21 U.S.C. § 841(b)(1)(A); see Counts 1(a)-1(d), Indictment at 2-3 (charging violations of 21 U.S.C. §§ 841(b)(1)(A)(i) (involving "1 kilogram or more of a mixture or substance containing a detectable amount of heroin"); (b)(1)(A)(ii) (involving "5 kilograms or more of a substance containing a detectable amount of . . . cocaine"); (b)(1)(A)(iii) (involving "50 grams or more of a mixture or substance [containing] cocaine base"); and (b)(1)(A)(iv) (involving "100 grams or more of [PCP]"). In addition, according to the government, the defendant "face[s] a minimum mandatory sentence of twenty-five years imprisonment[] and a maximum sentence of life imprisonment" if he is convicted of all crimes that he is charged with in the indictment. Motion at 3.

In January 2006, following the interception of allegedly drug-related wire communications between the defendant and co-defendant Cinquan Blakney over the previous two months, law enforcement officers executed a judicially approved search warrant on the defendant's house in Forest Heights, Maryland.[1] Id. at 2. Although the defendant was not present at the house when the warrant was executed, the defendant's girlfriend, Akilah Moore,

---

[1] Five telephone communications were intercepted between the defendant and Blakney, during which the two allegedly discussed drugs and drug transactions using coded language. Motion at 2; see also Tr. at 14 (defense counsel acknowledging "five phone calls between Mr. Morgan and Mr. Blakney").

was present. Id. at 2-3. During the search of the house, the officers recovered the following items, all consistent with drug trafficking and distribution: (1) $1,785 in United States currency; (2) approximately 86 grams of marijuana; (3) approximately 237 grams of PCP, with a street value of roughly $10,000; (4) assorted drug paraphernalia; (5) over 90 small, clear bottles of the kind used to supply PCP; (6) three digital scales;[2] (7) a quantity of disposable gloves and facial masks; (8) a half-full gallon container of nail polish remover, often mixed with PCP for distribution;[3] (9) four cellular telephones; and (10) a loaded .25 caliber firearm.[4] Id.; see also Transcript of December 19, 2006 Detention Hearing ("Mag. Tr.") at 4 (listing items recovered in the defendant's residence); Transcript of December 20, 2006 Detention Hearing ("Tr.") at 3 (same). Ms. Moore told the officers executing the warrant that she was merely an overnight guest and that the illegal contraband discovered on the premises did not belong to her. Motion at 2-3.

The defendant was arrested on October 3, 2006. Id. at 3. At the December 19, 2006 detention hearing before Magistrate Judge Facciola, the government requested that the defendant be held without bond pending the resolution of this case pursuant to the Bail Reform Act, 18 U.S.C. §§ 3142(f)(1)(B), 3142(f)(1)(C), and 3142(f)(2)(A), arguing that the defendant posed a danger to the community, which could not be mitigated by any condition or combination of

---

[2] At the December 19, 2006 detention hearing before Magistrate Judge Facciola, the government proffered that crack cocaine residue was found on one of the digital scales. Mag. Tr. at 4.

[3] The government represented at the December 19, 2006 hearing that a quantity of inositol, a substance often used as a cutting agent for illegal drugs, was also recovered in the defendant's residence. Id.

[4] At the December 20, 2006 hearing, the government represented that this firearm was found inside a backpack with an MCI logo, while the defendant represented through counsel that the firearm was found inside a purse belonging to Ms. Moore. Tr. at 6 (defense counsel's representation), 8 (government's representation); see also Motion at 3. As detailed below, the Court concludes that the defendant should be held without bond pending the resolution of this case regardless of whether the firearm was located in the backpack or in the purse.

conditions of release.[5] Id. at 3, 4-7. Magistrate Judge Facciola denied the government's request

and ordered that the defendant be released under the Pretrial Services Agency's heightened

supervision program. Id. at 4; Mag. Tr. at 16-17. The government appealed Magistrate Judge

Facciola's decision to this Court, Motion at 4, which stayed the release of the defendant until the

appeal could be heard, December 19, 2006 Order. This Court's review of the government's

request to detain the defendant without bond pending the resolution of this case is conducted de

novo. See 18 U.S.C. § 3145(a) (2000) (stating that "[i]f a person is ordered released by a

magistrate judge . . . the attorney for the Government may file, with the court having original

jurisdiction over the offense, a motion for revocation of the order"); see also United States v.

Laing, 851 F.2d 1501, 1501 (D.C. Cir. 1988) (per curiam) (noting that a magistrate judge's

decision imposing a pretrial detention order was "upheld, following de novo review, by the

district court").

## II. The Bail Reform Act

The Bail Reform Act states, in relevant part, that "[i]f . . . [a] judicial officer finds that no

condition or combination of conditions [for the release of the defendant pending the resolution of

his case] will reasonably assure . . . the safety of any other person and the community, such

judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e). This

---

[5] The government also predicates its request for detention without bond on (1) the fact that the defendant is charged with a crime of violence; and (2) its contention, raised in passing at the December 19, 2006 hearing and in the instant motion, that the defendant poses a serious flight risk if released pending the resolution of this case. Mag. Tr. at 3; Mot. at 3; see also 18 U.S.C. §§ 3142(e) (authorizing the order of detention without bond "if the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required"), (f)(1)(A) (mandating a detention hearing, "upon motion of . . . the Government, in a case that involves . . . . a crime of violence"). However, the government does not dwell on either of these arguments in any depth, see generally Mot.; Tr., and the Court does not rely on them in concluding that there is clear and convincing evidence that the defendant should be held without bond pending the resolution of this case.

finding must be supported by clear and convincing evidence, id. § 3142(f)(2), and a detention

order pursuant to this section must be accompanied by "written findings of fact and a written

statement of the reasons for the detention," id. § 3142(i)(1). Among the factors that must be

considered by the judicial officer in making a determination of whether any condition of release

would reasonably assure the safety of the community are "the weight of evidence against the

person" and "the nature and seriousness of the danger to any person or the community that would

be posed by the person's release." Id. §§ 3142(g)(2) and (4); see also United States v. Salerno,

481 U.S. 739, 755 (1987) (holding that "arrestees charged with serious felonies who are found

after an adversary hearing to pose a threat to the safety of individuals or to the community which

no condition of release can dispel" may be held without bond until trial). Finally, the Act

mandates that the judicial officer presume, subject to the defendant's rebuttal, "that no condition

or combination of conditions will reasonably assure . . . the safety of the community if . . . there

is probable cause to believe that the [defendant] committed an offense for which a maximum

term of imprisonment of ten years or more is prescribed in the Controlled Substances Act."[6] 18

U.S.C. § 3142(e).

### III. Analysis

For the reasons discussed below, the Court concludes in this case that there is probable

cause to believe that the defendant conspired to distribute, and to possess with intent to

distribute, 100 grams or more of PCP in violation of the Controlled Substances Act, 21 U.S.C. §

---

[6] Furthermore, the legislative history of the Bail Reform Act makes it clear that "the concern about [community] safety [is intended to] be given a broader construction than merely danger of harm involving violence." S. Rep. No. 98-225, at 12 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3195. The report goes on to expressly state "that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'" Id. at 13, reprinted in 1984 U.S.C.C.A.N. at 3196.

841(a)(1), a charge that carries with it "a term of imprisonment which may not be less than 10

years or more than life," id. § 841(b)(1)(A). Accordingly, the defendant must overcome the

rebuttable presumption that there are no conditions of his release that would reasonably assure

the safety of the community. 18 U.S.C. § 3142(e). The Court further concludes, after hearing the

arguments of both sides and upon careful examination of the relevant statutory factors, see id. §

3142(g), that the defendant has failed to rebut this presumption, and that clear and convincing

evidence exists "that no condition or combination of conditions [of the defendant's release] will

reasonably assure the safety of any other person and the community," id. § 3142(f)(2). The Court

has therefore ordered that the defendant be held without bond until trial. See December 21, 2006

Order.

In connection with the detention hearings held on December 19 and 20, 2006, the

government proffered, and the defendant did not dispute, that large quantities of drugs, drug

paraphernalia, and other items consistent with the trafficking and distribution of drugs, including

common cutting agents, a loaded .25 caliber firearm, and four cellular telephones, were

recovered from the defendant's residence. Motion at 2-3; Mag. Tr. at 4-6; see generally Tr.

These items, considered in conjunction with the five telephone conversations undisputedly

intercepted between the defendant and Mr. Blakney, each containing purportedly coded language

concerning drugs and drug transactions, are more than sufficient to establish a high likelihood of

the defendant's culpability in this case. See also Tr. at 3, 15-16. The Court thus concludes that

there is probable cause to believe that the defendant "committed an offense for which a

maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances

Act." 18 U.S.C. § 3142(e). Accordingly, "it shall be presumed that no condition or combination

6

of conditions [of the defendant's release pending the resolution of this case] will reasonably assure . . . the safety of the community." Id.

Despite this presumption, the defendant's counsel argues that there are conditions of release pending the resolution of this case, such as intensive supervision or home detention, that would sufficiently mitigate the risk that the defendant will do further damage to the community by continuing to sell drugs while he is released on bond. Tr. at 17-20. The Court disagrees.

During the debriefing of the defendant following his October 3, 2006 arrest, the defendant allegedly made numerous statements indicating that he has been involved in the distribution and sale of drugs—including crack cocaine, marijuana, and PCP—on a nearly continuous basis in the two decades from 1986 up until the date of his arrest.[7] Tr. at 7. The defendant also stated that he and Mr. Blakney were supplying each other with drugs and that the drugs found inside the defendant's residence at the time of the search warrant were supplied by Mr. Blakney. Id. It is this Court's experience that there are no conditions of release that will reasonably assure that an individual who has demonstrated a long-term propensity to destroy the lives of community

---

[7] The defendant signed a debriefing agreement on October 5, 2006, which stated that if he made a representation during a court proceeding that was inconsistent with, or contradictory to, any statement made by the defendant during his debriefing, the government was entitled to use his debriefing statements against him in that proceeding. See Tr. at 4, 7-8. Furthermore, in the event of an inconsistent or contradictory statement by the defendant, the debriefing agreement does not limit the government's use of the defendant's debriefing to only those statements relating to the inconsistency or contradiction; rather, the door is opened for the government to present any statement made by the defendant during the debriefing. See id. at 11-12. And, as the Court made clear during the December 20, 2006 detention hearing, the defendant's statement at the December 19, 2006 detention hearing that some of the PCP recovered in his residence belonged to Ms. Moore is inconsistent with the defendant's statement during his debriefing that the PCP recovered in his residence belonged to him. Id. at 20-21. Therefore, the government may introduce, and the Court may consider, any statements made by the defendant during his debriefing at the § 3142(f) detention hearing. The Court notes, however, that even if the statements made by the defendant during his debriefing could not be considered, it would nevertheless conclude by clear and convincing evidence, given the defendant's prior conviction for the distribution of cocaine and the weighty evidence of the defendant's culpability in this case, including the contraband recovered at the defendant's residence and the coded telephone calls made between the defendant and Mr. Blakney, of an ongoing drug distribution conspiracy involving the defendant, that there is no condition or combination of conditions of the defendant's release that would reasonably assure the safety of the community pursuant to 18 U.S.C. § 3142(e). See id.

7

members through the distribution and sale of dangerous and illegal drugs will be prevented from doing so if released pending the resolution of their case. See Tr. at 19-21. Given the defendant's admittedly lengthy history supplying, selling, and conspiring to sell powerful, illegal drugs such as PCP, continuing up until the time of his arrest and including at least one prior conviction for the distribution of cocaine,[8] and in light of the extensive amount of drugs, drug paraphernalia, and drug distribution accessories—such as drug packaging and vials, digital scales used to measure drugs, multiple cell phones, and materials used to process drugs for distribution—discovered at the defendant's residence as well as the multiple coded drug conversations the defendant is alleged to have had with Mr. Blakney, the Court concludes that there is clear and convincing evidence that to release the defendant pending trial would pose a danger to the community, and to members of the community, regardless what condition or combination of conditions of release are put into place. Accordingly, and pursuant to the terms set forth in its December 21, 2006 Order, the Court concludes that the defendant must be held without bond in this matter pending trial. In addition, it is hereby

**ORDERED** that the government's Motion for Emergency Review and Appeal of Release Orders is GRANTED.

---

[8]  It is undisputed that the defendant has at least one prior conviction for the distribution of cocaine, although the date of this conviction is unclear. See Motion at 8 (stating that "[i]n 1997, Morgan was convicted of distributing cocaine . . ., for which he received a felony sentence"); Transcript of December 19, 2006 Detention Hearing ("Mag. Tr.") at 6 (stating that the defendant has "a 1986 conviction" for the distribution of cocaine); Transcript of December 20, 2006 Detention Hearing ("Tr.") at 19 (referring to "a 1987 drug conviction for distribution of cocaine, going back almost twenty years").

8

**SO ORDERED** this 5 day of January, 2007.

REGGIE B. WALTON
United States District Judge