UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA          :
                                  :      Criminal No. 06-21 (RBW)
        v.                        :      Judge Reggie B. Walton
                                  :
JAMES MORGAN, et al.,             :
                Defendants.       :

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTION TO SUPPRESS TANGIBLE EVIDENCE AND STATEMENTS

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant James Morgan's motion to suppress tangible evidence and statements (Document 116).   As grounds for this opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at a motions hearing.

### Background

On January 10, 2006, a federal Task Force Officer applied for a search warrant for 119 Cree Drive, Oxon Hill, Maryland, the residence of defendant James Morgan.   After reviewing the application and supporting affidavit, United States Magistrate Judge William Connelly of the United States District Court for the District of Maryland approved the search warrant on that date.   On January 13, 2006, agents and officers of the FBI, the Metropolitan Police Department and other agencies executed the warrant on the Cree Drive residence.   After knocking and

announcing that they were executing a search warrant, law enforcement officers entered the

residence and recovered weapons, substantial illegal narcotics and drug trafficking paraphernalia,

photographs, documentation and other evidence.

## Argument

### 1. Since the Warrant was Supported by Probable Cause, the Evidence is Admissible.

Defendant James Morgan argues that the warrant affidavit lacked sufficient information for

a person to reasonably conclude that contraband or evidence of a crime would probably be found

at 119 Cree Drive.    First of all, defendant Morgan does not dispute his connection to 119 Cree

Drive.    As reflected in the warrant affidavit, defendant purchased this property on November

11, 2001 and was still owned by him. In addition, between August 8, 2005 and December 13,

2005, there were 283 telephonic contacts between defendant Cinquan Blakney, also a long time

drug dealer, and defendant Morgan. Defendant Morgan's calls came from telephone number

(202) 251-1998. This number was subscribed to defendant Morgan at 119 Cree Drive.    Law

enforcement also conducted surveillance at 119 Cree Drive and observed automobiles at that

location registered to Morgan, at least of which was registered to him at 119 Cree Drive.

Besides defendant Morgan's undeniable connection to 119 Cree Drive, the affidavit in

support of the search warrant provides ample likelihood that the items listed in the search warrant

would be found in defendant Morgan's home. In the affidavit in support of the search warrant

application, the affiant provided substantial information indicating that contraband and evidence

2

would be found in Morgan's home on Cree Drive.    In addition to Morgan's association with

Cinquan Blakney, a well known and long time drug trafficker, the affiant presented information

that Morgan was also a drug trafficker.    A reliable FBI confidential informant (hereinafter "CI1")

advised law enforcement officers that defendant Morgan provided a half kilogram of crack

cocaine to defendant Cinquan Blakney.    According to CI1, Morgan supplied crack cocaine and

PCP to the 1200 block of Valley Avenue, Southeast, Washington, D.C.    Moreover, between

November 2005 and December 2006, the period that the FBI was intercepting Cinquan

Blakney's telephone calls, James Morgan was involved in numerous drug related calls with

Blakney.    In addition, the affiant, Detective Thomas Webb, a 15-year veteran of the MPD and

participant in the execution of over 800 search warrants, stated that drug dealers maintain books,

receipts, notes, ledgers, airplane ticket, money orders, banks records and other papers and items

relating to the transportation, ordering, sale and distribution of controlled substances. Detective

Thomas further stated that these aforementioned items along with any weapons used to facilitate

their illegal drug activities are generally kept by defendants in their homes, where it can be easily

accessed.

Police have probable cause to search where the totality of the circumstances suggests "a

fair probability that contraband or evidence of a crime [would] be in a particular place." Illinois

v. Gates, 462 U.S. 213, 238 (1983).    That is, "where the known facts and circumstances are

sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a

crime will be found." Ornelas v. United States, 517 U.S. 690, 696 (1996).    Probable cause is

3

assessed "from the particular viewpoint of the officer involved in the search or seizure."    United

States v. Prandy-Binett, 995 F.2d 1069, 1071 (D.C. Cir. 1993).    This is so because "[l]aw

enforcement officers naturally reach conclusions based on their training and experience."    Id.

In making a probable cause determination, the Court should decide "whether [the] historical facts

[leading up to the search], viewed from the standpoint of an objectively reasonable police officer,

amount to . . . probable cause."    Ornelas, 517 U.S. at 696.

  When assessing probable cause for warrants, [t]he task of the issuing magistrate is simply

to make a practical, common- sense decision whether, given all the circumstances set forth in the

affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying

hearsay information, there is a fair probability that contraband or evidence of a crime will be

found in a particular place. And the duty of a reviewing court is simply to ensure that the

magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed. Illinois v.

Gates, 462 U.S. 213, 238-39 (1983) (citing Jones v. United States, 362 U.S. 257, 271 (1960)).

The issuing court's determination of probable cause "should be paid great deference by reviewing

courts."    Gates, 462 U.S. at 236 (citation omitted).    Moreover, the reviewing court should

recognize that affidavits for search warrants "must be tested and interpreted by magistrates and

courts in a commonsense and realistic fashion. They are normally drafted by non-lawyers in the

midst and haste of a criminal investigation. Technical requirements of elaborate specificity once

exacted under common law pleading have no proper place in this area."    United States v.

Ventresca, 380 U.S. 102, 108 (1965).    Applying these standards, it is clear that the information

4

contained in the affidavit was sufficient to establish probable cause for the search warrant on 119

Cree Drive.    The affidavit provides more than sufficient evidence establishing that the defendant

owns and resides at the property, that he is a large-scale drug trafficker and that drug traffickers

maintain evidence of their drug trafficking activity in their homes and property.


1.    Even if the Warrant Lacked Probable Cause, Under *Leon* the Evidence Should not be
       Suppressed.

Even if the defendant could somehow prove that the affidavit did fail to establish

probable cause, suppression of the evidence would not be an appropriate remedy if the officers

conducting the search acted in "objectively reasonable reliance" on the warrant's validity.    United

States v. Leon, 468 U.S. 897, 922 (1984).    In Leon, the Supreme Court held that evidence need

not be suppressed when police obtain the evidence through objective good faith reliance on a

facially valid warrant that is later found to lack probable cause.    Id.    Ordinarily, the existence of

a warrant is sufficient to establish that the officers acted in good faith in conducting the search.

Id.    Suppression in such a case is appropriate only if "the magistrate abandoned his detached and

neutral role" in assessing the affidavit or if "the officers were dishonest or reckless in preparing

their affidavit or could not have harbored an objectively reasonable belief in the existence of

probable cause."    Id. at 926.    There is no evidence that the information in the affidavit was false

or made in reckless disregard for the truth; that the magistrate judge "wholly abandoned" his

judicial role; or that the affidavit was so "lacking in indicia of probable cause" or so "facially

5

deficient" that the executing officers could not reasonably rely on it.   Leon, 468 U.S. at 923

(citations omitted).   Thus, the Court should deny defendant's motion.

### 3.    The Evidence Should Not be Suppressed Under *Franks v. Delaware*

Defendant argues that the search warrant affidavit contained deliberate or reckless

misrepresentations of material facts, one of three situations identified by the Supreme Court

where the "good faith" exception would not apply.   In order to obtain suppression of evidence

seized pursuant to a search warrant assertedly based on a false affidavit, a defendant must show

that (1) the affidavit contained false statements or omissions; (2) the statements or omissions

were material to the issue of probable cause; and (3) the false statements or omissions were made

knowingly and intentionally, or with reckless disregard for the truth.   Franks v. Delaware,   438

U.S. 154 (1978); see United States v. Richardson, 861 F.2d 291, 293 (D.C. Cir. 1988), cert.

denied, 489 U.S. 1058 (1989);   Dailey v. United States, 611 A.2d 963, 967 (D.C. 1992) (a

"Franks" challenge to an affidavit may be based on intentional (material) omissions from an

affidavit, as well as intentional misstatements in an affidavit); United States v. Pace, 898 F.2d

1218, 1232 (7th Cir.), cert. denied, 110 S. Ct. 3286 (1990); Washington v. District of Columbia,

685 F. Supp. 264, 270-271 (D.C. 1988).

A false statement or omission is material where, assuming the false statement is excluded

from the affidavit or the omission is included in the affidavit, the affidavit will not support a

magistrate's finding of probable cause.   Franks v. Delaware,   438 U.S. at 171 (" [I]f, when

material that is the subject of the alleged falsity or reckless disregard is set to one side, there

remains sufficient content in the warrant affidavit to support a finding of probable cause, no

6

hearing is required."); <u>see</u>, <u>e.g.</u>, <u>United States v. Richardson</u>, 861 F.2d at 293-294 (an affiant's false statement in an affidavit that he, as opposed to another police officer, had observed the informant enter the defendant's apartment and leave with drugs is immaterial because it is not necessary for the affiant to base the affidavit on his personal observations): <u>Jones v. United States</u>, 828 A.2d 169 (D.C. 2003) (affidavit established probable cause after challenged statements excluded); <u>Dailey v. United States</u>, 611 A.2d at 968; <u>United States v. Pace</u>, 898 F.2d at 1232 (if other facts in the affidavit establish probable cause, omissions immaterial; affidavit failed to state that another magistrate had previously examined the same affidavit and declined to issue a warrant, a previous search of the defendant's home uncovered only suspected cocaine residue, and the police had previously searched the defendant but did not find cocaine).

Before a hearing is required under <u>Franks</u>, the defendant must make a "threshold showing" that the affidavit is false in some material respect:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portions of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

<u>Franks v. Delaware</u>, <u>supra</u>, 438 U.S. at 171.    <u>See</u> <u>Gaston</u>, 357 F. 3d at 81 (allegations not sufficiently specific to warrant <u>Franks</u> hearing).

Furthermore, in those cases where a <u>Franks</u> hearing is warranted, the defendant has the burden of proving, by a preponderance of the evidence, that the affiant acted in "bad faith" -- that

7

is, with the intent to deceive the court or with reckless disregard of the truth (or materiality) of his representations or omissions. <u>See</u> <u>Dailey v. United States</u>, 611 A.2d at 967 (rejecting defendant's argument that trial court should consider "what a reasonable <u>person</u> would have thought, not what the officer reasonably believed <u>in light of all the evidence</u> available to him or her")(emphasis in original); <u>United States v. Vanness</u>, 85 F.3d 661, 662 (D.C. Cir. 1996) (drug search warrant upheld despite inclusion of misleading sentence). Accordingly, this evidence should not be suppressed.

Here, defendant Morgan simple claims that a "<u>Franks</u> hearing is necessary for the Court to determine whether the affidavit is facially sufficient." (Document 116 at p. 5) A <u>Franks</u> hearing is not the appropriate vehicle for such a determination. All the Court need do is look at the affidavit to determine whether it is "facially sufficient." Morgon goes on to state that "the affiant failed to inform the issuing judicial officer of the conflicting information in its possession." What conflicting information Morgan is referring to is not identified in the motion. Again, such conclusory assertions are not enough for a <u>Franks</u> hearing. Morgan also states that the affidavit failed to provide "information concerning the absence of any causal connection between Mr. Morgan and the affiant's investigation." Morgan, however, fails to acknowledge that there was such a causal connection as evidenced by the wiretap calls and the confidential informant. Defendant's request should be denied.

**4. Agents of the FBI Complied with the Knock-and-Announce Requirement Prior to Executing the Search Warrant.**

8

An FBI Special Agent performed the knock-and-announce at 6:30 a.m. while executing the search warrant at defendant's home. Approximately one minute later, when no one answered the door, entry was made by mechanical breach. Thus, there was no violation of the knock-and-announce requirement

Moreover, The United States Supreme Court has expressly ruled that failure to comply with the knock-and-announce requirement does not result in the suppression of evidence. Even if defendant could establish a violation of the knock-and-announce requirement, suppression of evidence is now directly precluded under Hudson v. Michigan, 126 S. Ct.2159, 2168 (2006) ("Resort to the massive remedy of suppressing evidence of guilt is unjustified."); accord United States v. Southerland, 466 F.3d 1083, 1086 (D.C. 2006) (citing Hudson and finding that exclusionary rule did not apply to violation of federal statute authorizing officers to break open door to execute search warrant after giving notice of their authority and purpose and being refused admittance).

### 5. No Statements Given By Defendant were in Violation of His Constitutional Rights

Defendant Morgan contends that statements given by him to the police should be suppressed because they were taken in contravention to his constitutional rights. The government disagrees.

In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court established a procedural mechanism to safeguard the exercise of the Fifth Amendment by persons confronted with custodial interrogation.  A defendant's waiver of the Miranda rights involves two separate questions. The first is whether the defendant "voluntarily" waived his rights in the sense that his

9

decision was "'the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" Colorado v. Spring, 479 U.S. 564, 573 (1987) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). The test used to determine if the statements made were voluntary is whether the statements were the product of an essentially free and uncoerced choice made by the defendant. See Schneckloth v. Bustmonte, 413 U.S. 218, 225 (1973).  The second question is whether the defendant "knowingly and intelligently" waived his Miranda rights. Id. In determining whether a defendant's waiver of his rights was knowing, intelligent, and voluntary, the Court must look to the totality of the circumstances, while the validity of a waiver must be determined by the particular facts, background, experience and conduct of the accused. See North Carolina v. Butler, 441 U.S. 369, 374 (1979).

On August 23, 2006, defendant Morgan was arrested sometime around 7:00 a.m., at his place of employment at a construction site in Washington, D.C.   He was transported to the FBI Washington Field Office and processed.   After processing he was advised of his Miranda warnings at 8:25 a.m.   Defendant Morgan then made a knowing, intelligent and voluntary waiver of his rights as evidenced by his signature on the Advice of Rights which states, "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present."

Defendant was not held for any undue time period after his initial arrest and prior to giving his statements to the police. Defendant was arrested at approximately 7:00 a.m. and signed his Advice of Rights form at approximately 8:25 a.m. During the short intervening time period, defendant was transported to the FBI and subjected to the standard arrest protocol. Furthermore,

10

there is no evidence whatsoever that defendant was met with a hostile environment contributing

to his waiver of his rights, despite his conclusory statement to the contrary.   Moreover,

defendant's numerous interactions with law enforcement has undoubtedly familiarized him with

these rights, as he has a long criminal history dating back to at least 1986.

Since the government need only show by a preponderance of the evidence that a

defendant knowingly, intelligently and voluntarily waived his rights, defendant's Motion to

suppress statements given to the police after he made a knowing, voluntary and intelligent waiver

of his rights should be denied.   See Colorado v. Connelly, 479 U.S. 157, 168 (1986); Lego v.

Twomey, 404 U.S. 477, 489 (1972); United States v. Yunis, 859 F.2d 953, 962 (D.C. Cir. 1988).

11

WHEREFORE, the United States respectfully requests that the defendant's motion be denied.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY


GEORGE ELIOPOULOS
ANTHONY SCARPELLI
Assistant United States Attorneys

12